WATSON and PAUL *against* The Insurance Company of North America.

THIS was an action of covenant upon a policy of insurance by the defendants for 1000 dollars, on Goods by the sloop *Rebecca*, at and from her last port in *Jamaica* to *Philadelphia*, with liberty to touch at the *Mole*. The plaintiffs declared for a total loss by capture; and at the trial before *Shippen* C. J. and *Smith* J. at Nisi Prius in *March* 1802, the following facts were in evidence. The sloop, with her complete return cargo on board, sailed from *Green Island* in *Jamaica* on the 28th *May* 1797, bound for *Montego Bay*, not with a view to take any additional cargo, but to get the requisite clearance and papers from the custom house at that place, there being none at *Green Island*. On the 29th *May*, on her way to *Montego Bay*, she was captured by a *French* privateer, carried into *Cape François*, and together with her cargo, condemned. On the 3d *August* 1797, the protest of the captain setting forth the capture and condemnation was exhibited at the office of the defendants, when a demand was made for a total loss, which the defendants refused to pay; whereupon this action was instituted. The plaintiffs' interest was proved.

The cause was argued to the court and jury upon three objec-

*In an action on a policy of insurance, wherein the plaintiff declares for a total loss, and proves a capture and condemnation of the property insured which he has never abandoned to the underwriters, the jury may estimate the value of the spes recuperandi, deduct it from the whole sum insured, and find the remainder as a partial loss.*

1803.

WATSON
and
PAUL
v.
Ins. Co.
N. A.

tions to the claim. *First*, That *Green Island* was not the sloop's last port in *Jamaica* within the meaning of the policy; for as the policy was to attach only when she finished her coasting, and she had sailed to *Montego Bay* for her papers, it was evident that *Montego Bay* was contemplated to be her last port. *Second*, That it was against usage for vessels loading at *Green Island* to go to *Montego Bay* for a clearance, but that *Lucea* was the port from which it should have been obtained over land; and that sailing to *Montego Bay* was therefore a deviation. *Third*, That there had been no abandonment, without which the plaintiffs could not recover a total loss, and no partial loss being proved, they could not recover any thing.

The first and second objection the chief justice in his charge left very much to the jury; and they were not noticed in any subsequent stage of this cause. The third was reserved for consideration in bank. The jury, without following any rule that was suggested, but, as was understood at the time, by compromise with each other, found for the plaintiffs 740 dolls. 10 cents; and it was then agreed that the propriety of a verdict for this sum under the circumstances of the case should also be reserved as a point to be argued with the other upon a motion for a new trial by the defendants. The points were reserved in the following terms: 1. Whether an abandonment is sufficiently proved or waived by evidence of a demand as for a total loss and refusal to pay. 2. Whether where the demand is for a total loss, and there is proof of a total loss, the jury can find a partial loss or a less sum than is underwritten.

They were now argued by *M. Levy* and *Lewis* for the plaintiffs, and by *Moylan*, *E. Tilghman*, and *Ingersoll*, for the defendants.

On the *first* point *Levy* argued that no specific words are necessary to form an offer of abandonment. Any words will answer if they indicate a willingness in the assured to cede the property damaged or jeopardized, as soon as the loss shall be paid. All that is necessary is to do some act signifying an *intention* to abandon, *Mitchell* v. *Edie* (*a*); and a demand for a total loss is the fullest evidence of this intention. Upon the payment of the loss by the defendants the property would have vested in

(*a*) 1 *D. & E.* 616.

1803.

WATSON
and
PAUL
v.
Ins. Co.
N. A.

them without further act by the plaintiffs, which shews the reason of the principle. As in trover and trespass, after judgment and satisfaction for the conversion or taking of goods, the property is in the defendant. *Brown* v. *Wotton*, (*a*) *Lacon* v. *Barnard*, (*b*) *Gilb. Ev.* 265. The object of an offer to abandon is to inform the insurer of the party's election, that he may pursue the remnant of the property, and make it of as much value as possible, *Allwood* v. *Henkle*. (*c*) Any act which communicates this information must be equal to a formal offer, and a demand as for a total loss is as explicit to this effect as any act can be. It was evidently so considered in the case of *Havelock* v. *Rock-wood*, (*d*) where the assured without abandoning or offering to abandon in terms, merely demanded as in this case payment as for a total loss. He was indeed prevented from enjoying the benefit of it, because upon a demand by the insurers that he should actually assign his interest, he refused; which negatived the willingness to abandon implied by the demand of payment; of course, but for this refusal, he might have recovered upon his demand alone. This was a case of capture like the present, and is in point.

But the refusal to pay, without mentioning the want of an offer to abandon, was at all events a waiver; as in the case of a tender of bank bills, where no objection is made particularly to bills.

On the *second* point *Lewis* argued that it was clear the finding of the jury would stand well with the declaration for a total loss, that point being at rest by the case of *Gardiner* v. *Croasdale*. (*e*) The proof of total loss referred to in the point reserved is such as the circumstances of this case set forth, a loss which would have been total upon abandonment, but which is so incomplete as to leave a *spes recuperandi*. There has not been a total destruction, the property remains in specie, and the question is whether the jury can make a deduction for the chance of recovery. The assured is not in any case bound to abandon; but the only consequence of not abandoning is that he must be satisfied with an average loss; *Goss* v. *Withers*; (*f*) *Mitchell* v. *Edie*; and as an average loss he may recover any thing even a cent short of the sum insured. *Park* 103. 144. 199.

(*a*) *Cro. Jac.* 73.
(*b*) *Cro. Car.* 36.
(*c*) *Park* 172.

(*d*) *Atcheson* 1. 8 *D. & E.* 274.
(*e*) 2 *Burr.* 906.
(*f*) 2 *Burr.* 679.

1803.

WATSON
and
PAUL
*v.*
Ins. Co.
N. A.

The plaintiffs have chosen to reserve the *spes recuperandi* to themselves, which they had a right to do, and which it is to be presumed the jury have valued. If the loss is so complete that there is nothing left, no abandonment is necessary according to *Camberling* v. *M'Call;* (a) if on the other hand an abandonment is necessary to make it a total loss there being something to cede, that something is a deduction from a total loss which leaves an average. *Havelock* v. *Rockwood* was the case of a declaration for a total loss, a total loss like the present proved, and a recovery for a partial loss.

For the defendants it was contended that an explicit offer to abandon was necessary, because notwithstanding the demand as for a total loss, the plaintiffs might still upon a change of prospects have recurred to the captors; by this means the insurers would have been kept inactive by their uncertainty, and the assured would have played fast or loose according to the colour of events.    All the cases require an offer to abandon, and they speak of it in connexion with and subsequent to the demand as for a total loss, proving thereby their distinct character. 2 *Mar..h.* 479. 481. 483. 485. 488. 494. 517, 518. *Park* 82. 143, 144. 172. *Havelock* v. *Rockwood* by no means decides that a demand for a total loss is equivalent to an offer of abandonment. On the contrary the underwriters in that case demanded an assignment of more than they were entitled to, which the assured very properly refused, and then the case stood upon the original ground, a simple demand of payment, which was held to be insufficient.

There is no pretence for presuming a waiver. If an offer to abandon was necessary, the insurers had a right to refuse; the title of the assured to payment as for a total loss was incomplete, and the demand unfounded. It never was heard that a party bound to a certain duty after the performance of a condition by another, is likewise bound to tell the other party that he must perform his condition under the penalty of being presumed to waive it.

The *second* point involves the existence of abandonment; for if upon a declaration for a total loss, and proof of a capture and condemnation of the property, the jury may value the *spes recuperandi,* and their finding is protected as a partial loss, it will

(a) 2 *Dall.* 280.

supersede abandonment in every case. The objections to it are insurmountable. The jury must find according to their proof. Now what has been proved here? Capture and condemnation and the property still in the hands of the captors. Will any one say this is an average loss? Is there a dictum, the sentiment of an elementary writer, even the opinion of a practical insurer to justify such a name for such a loss? Do any of the rules for the adjustment of partial losses apply to it? Has any of the property insured come to the owner's hands, or to any one for his use, so as to form a deduction from the whole sum; or has there been damage or partial injury? Certainly not, and without this there cannot be an average loss. But it is said the *spes recuperandi* may be valued and deducted. By what rule is this to be done? Contracts of this kind are not to be governed by the vague notions which twelve men may happen to form of the chances of war, or the justice of foreign nations. They are contracts to be governed by facts and not by imagination; and nothing can be more completely indeterminate than the value of this hope. But further; the *spes recuperandi* goes to the whole property; it is either good for the whole, or good for nothing. If it is good for the whole, the assured while he retains it should not recover any thing; if it is good for nothing, where can be the ground of a partial loss? The truth is that the law of insurance, to do perfect justice to both parties has said to the assured, you shall not retain the *spes recuperandi* upon a pretence that it is good for nothing, receive from the underwriters an indemnity for your loss, and perhaps afterwards recover the thing insured; but you may within a reasonable time transfer this hope to the insurer, who must pay the sum insured, and may then make the best of the property for himself.

It is also argued that if this is not an average loss, it is so total as not to require abandonment. This proceeds upon a mistake. The law of insurance recognises but two kinds of loss, perfect in themselves, and which require no act of the assured to vest his title to recover for them. The first is a total destruction, as by sinking at sea, blowing up &c.; the second is a partial loss, where the damage or injury to the property is short in some degree or other of total destruction. When either of these losses is proved by the assured, his recovery must be *pro tanto*. Under certain circumstances the same law authorizes the assured by abandoning his interest to the underwriters to recover a

1803.

WATSON
and
PAUL
*v.*
Ins. Co.
N. A.

1803.

Watson
and
Paul
_v._
Ins. Co.
N. A.

total loss from them in cases of extensive partial loss, and also in cases where there is neither partial loss nor total destruction, as where a voyage is broken up, or the property is captured and condemned as in the present case. But in these cases without abandonment there is no total loss; and every case in the books says so. It is true that even a capture may turn out, and it often does turn out, to be a partial loss; and as such may be made good under the policy as well as those extensive partial losses which the assured has neglected to convert into a total loss by abandoning; but unless the assured can shew a true partial loss, or has abandoned in reasonable time so as to have a claim for a total loss, his indemnity under the policy is gone. The principle will stand the test of any investigation; it is part of the essence of indemnity, that while the thing insured is in existence, you shall not recover as for a total loss, unless you have surrendered to the insurers your claim to the property with the right of pursuing it in the best manner they can devise.

The cases which have been cited are not to the purpose. In _Havelock_ v. _Rockwood_ and in _Mitchell_ v. _Edie_ a partial loss was proved as well as recovered; and the language of _Buller_ J. in the latter case is very explicit. " I am of the same opinion with " my brother _Ashhurst_ that where the voyage is lost but the pro- " perty is saved, the owners have an option to abandon, but " unless they do elect, it is only an average loss." Which most evidently means that total loss is out of the question without abandonment, and that the recovery can only be for an average loss where such a loss is proved. In the case of _Bell_ v. _Beveridge_ (a) which was a case of capture and condemnation like

---

(a) I have been so fortunate as to procure a memorandum of the Chief Justice's charge in the case referred to, from the notes of his honour Judge _Smith_.

Shippen C. J. " The principal point rested on by the defendant is whether there was an abandonment in proper form and time. As to forms of abandonment, none are prescribed, and they are not material. It is sufficiently made out that plaintiff meant to abandon; but was it in time? It must be in reasonable time after he has well authenticated intelligence of the loss, so that he shall not by delay derive any advantage. The time between the intelligence and the abandonment was however a long time, four or five months. But the plaintiff seemed disposed to look to the underwriters from the first; if he waited till he should know whether he could recover from the French government, he ought not to recover. _As to average loss, it is out of the question._" Vide 4 _Dall._ 272. s. c.

1803.

WATSON
and
PAUL
*v.*
Ins. Co.
N. A.

this, his honour the *Chief Justice* said, " when there is a claim " for a total loss, and proof of a total loss, an average loss is " out of the question." So in *M'Callmont* and *Boys* v. *Murgatroyd*, decided in this court. Indeed it is useless to turn to cases for this principle; the books are full of them; and if it were not so, why have not plaintiffs, in the numberless cases in which they have failed for want of abandonment, attempted a partial loss. But a case in point is *Bischoff* v. *Agar*. (*a*)

SHIPPEN C. J. The action is brought for the sum underwritten in the policy, to wit, for 1000 dollars, as for a total loss; the jury have found a verdict for the plaintiffs for the sum of 740 dollars and 10 cents, as for a partial loss; the material question is whether the jury could find as they have done.

Where any part of the thing insured is *left*, and in that case alone, the insured is bound *to abandon* to enable him to recover as for a total loss; the only penalty for not abandoning is that the assured must be satisfied with an average loss. Here it is said there was something left, there was a *spes recuperandi*, there was a chance of a reversal of the sentence of condemnation, and that this chance should have been ceded to the underwriters. The jury therefore might have considered this as an average loss, that is to say, they might have estimated the *spes recuperandi* and chance of a reversal of the sentence as equal to the difference between the sum underwritten and the sum found and obliged the insurers to pay the remainder as an average loss. That a partial loss may be found in an action brought for a total loss cannot be denied; but it is said that where the demand is for a total loss, and a total loss is *proved*, there cannot be a verdict for a partial loss, otherwise the necessity of abandonment might in all cases be evaded by the jury's being called upon and consenting to give a verdict for some small matter less than the whole sum insured. If this should ever be the case, it will always be in the power of the court to prevent the evasion; but the case in 1 *T. Rep.* and some others shew that a verdict may be found for a partial loss where a total loss is proved as well as demanded, if the party had chosen to consider it as such by an abandonment. And it is not competent to the defendant to say there is *something left* for the pur-

(*a*) *Park* 82. *5th ed.*

1803.

Watson
and
Paul
*v.*
Ins. Co.
N. A.

pose of making an abandonment necessary, and yet that there was *nothing left* to make it an average loss. There seems to be no injustice done to the defendants by the finding of the jury.

But it is said that although there are cases where the loss would have been total and recoverable as such *when* the loss happened, but which by subsequent events were become not total, the insured by not making a seasonable abandonment might be entitled to an average loss; " but where the loss was " total originally, and continued so to the time of the demand, " there can be no partial loss, but the insured by not abandon- " ing will lose his right of recovering from the underwriter " either in whole or in part." The consequence of this doctrine would be that the greater the loss the insured should suffer, the less the insurer should pay. An insurance is a . contract of indemnity for a loss within the policy, and the law imposes no arbitrary penalty upon either party, but proceeds upon just and uniform principles: thus where the loss sustained is such as that the assured by an abandonment might consider it as a total loss, yet waits till it appears part of the property is saved, he then loses his right of recovering as for a total loss, and must look to that part of the property saved according to its value for part of his indemnity, and has recourse to the underwriter for the remainder of the sum insured as an average loss. So where the loss is such as might be considered as total from the beginning, and continues so to the time of the demand, it is then that the two kinds of total loss are to be considered; if the loss is of that kind as to be attended with a total destruction of the property, as being consumed by fire, or sunk in the sea, the insured in that case may recover from the underwriter *without any abandonment*, as there is nothing left to abandon; but if it is said a capture and condemnation is not a loss of that kind, but leaves a *spes recuperandi* in the assured, and therefore something is left, although only a chance, for the abandonment to operate upon, what will be the effect of not abandoning? Exactly the same as in the former case, where the loss must be paid after deducting the value of the thing saved. So in this case the loss must be paid after deducting the value of the thing not ceded, which value is the estimated benefit which the assured may receive from retaining the chance either of a recapture or the reversal of the decree of condemnation. It is true this benefit is not so easily calculated as where goods are saved and sold;

but the principle is the same; and where the jury from the circumstances of the case, and from their experience of the strength of the respective belligerent powers, and the probable injustice of the condemnation, have any data to calculate the chance of recovering back the property, and can reduce it to a fractional part of the sum insured, I see no reason why the value of that chance may not be deducted from the sum insured, and the assured recover the remainder from the underwriters, as in the case of common average losses; for it is only the value of the thing neglected to be ceded, which forms a deduction in any case of loss, from the sum insured.

YEATES J. Where an insurance has been made, and the property insured has wholly perished by some one of the perils expressed in the policy, there can be no necessity for abandoning or offering to abandon; for there being nothing in existence on which the abandonment can possibly operate, it would be highly absurd to declare that a ceremony vain and idle should be practised, which could be attended with no benefit whatever to either party. On this point may be cited 1 *T. R.* 613. 615. 2 *Burr.* 687. 1201. 1203. 1 *Bl. Rep.* 276. *Park* 161. *1st ed.* In *Great Britain*, notwithstanding a capture and condemnation by an enemy, the owner of the vessel will be entitled to have the property again on payment of salvage. But this was an effect produced by the stat. of 29 *Geo.* 2. *c.* 34. *s.* 24.; and hence it is that Lord *Mansfield* says in 2 *Burr.* 695. the *jus postliminii* in *England* continues for ever. The general law of nations must govern us on this head, as it was considered in *May* 1797, when this capture took place; and I have always understood that such capture and condemnation by an enemy altered the property. If such capture and condemnation can be considered equivalent to an entire destruction of the property in the present case, as to the contracting parties, there can be no greater necessity for an abandonment in the one instance than in the other.

But it has been objected that here the vessel existed at the time of the demand for the total loss, and that the *spes recuperandi* was not wholly extinguished, inasmuch as appeals were allowed from the *French* court of admiralty in the *West Indies* to a superior tribunal. On this latter ground my great difficulty has arisen. Because if the insured did not conceive there was any chance

1803.

WATSON
and
PAUL
*v.*
Ins. Co.
N. A.

1803.

WATSON
and
PAUL
v.
Ins. Co.
N. A.

of reversing the sentence of condemnation on an appeal, they ought not to preclude the insurers from exercising their own judgment on the case, and should furnish them with the proper documents to enable them to conduct the appeal. Nevertheless it cannot be denied that all the authorities concede to the insured the election whether they will abandon or not, and that they are not bound to make an offer of abandonment if any part of the property exists. 1 *T. R.* 615. If he does not abandon in such cases wherein lfe might consider it as a total loss, though partial in its nature, by declaring his early and unequivocal option and offering to abandon, he cannot by holding back, convert the partial loss into a total loss. *Fuller* v. *M'Call.* Nor can it be denied that if a suit be commenced for a total loss, and a partial loss be proved, such partial loss may be recovered therein. 2 *Burr.* 904. But it has been contended that where in such suit a total loss is proved at the trial, no instance can be shewn of the recovery of a partial loss. Admit this to be the case, still if no authority can be shewn establishing a different doctrine, and no injustice is done thereby, the plaintiffs recovering the damages they have actually sustained within one of the perils expressed in the policy, I see no reason to set aside the verdict.

SMITH J. In all cases the insured may choose *not* to abandon. *Burr.* 697. *Park* 162. 2*d ed.* 2 *Bac.* 157. 1 *T. R.* 615. They are not bound to abandon; there never was a case in which it was determined that they were; all the cases have said that where they are entitled to abandon, if any part of the property exists, they have the option whether they will abandon or not. If the property existing amounts only to a shilling, the insured may in an action for a partial loss, recover the whole amount insured, excepting that shilling.

Now it is settled law that if action be brought for a total loss, if the plaintiff prove but a partial loss, he may recover as for a partial loss. It is also settled law that the assured cannot recover as for a total loss unless he cede or abandon all his right to the underwriters. *Park* 161. 92. This right to abandon is certainly generally for the ease and often a real benefit of the assured. It is always troublesome, and frequently turns out to the loss of the underwriter. He will therefore almost always prefer paying for a partial loss to paying for a total loss, and taking

1803.

Watson
and
Paul
v.
Ins. Co.
N. A.

the management of the existing property upon himself. It is scarcely ever in his power to manage it to so great advantage as the assured can.

The hope of recovering cannot be lost while any part of the property exists, and the assured need not part with the chance unless he pleases. If he does not part with it he has more difficulty in recovering than if he does; for on abandonment he has only to prove the gross value of the vessel or goods, and the loss, which is generally easily made; but if he be content to retain the chance of recovering any part, the proof to recover on a partial loss is more difficult to be made out. He must not only prove the value, but he must prove the amount of the injury done to every part, and the value of that part of it which is in existence. If the assured choose to take this burden by not abandoning when he may, he cannot recover for a total loss if any of the property exists; and in estimating the amount of the average loss the jury will make a due deduction for his chance of recovering according to its foundation.

The cases in *Esp. Rep.* 237. 1 *T. R.* 608. are substantially the same with the present. There the plaintiff might have recovered as for a total loss had he abandoned in due time; so here. There the plaintiff recovered as for a partial loss. What principle of law properly understood, what rule of practice was there to prevent him from recovering for a partial loss? The right to recover for an average loss was not even called in question by the counsel; they properly contend and the court decide that plaintiffs could not recover more than an average loss.

No hardship on the defendants as to the amount of the damages found, is suggested. " The defendants came prepared to " shew either that no damages had happened at all, *or* at least " that damages did not happen to such a degree as plaintiff " alleged in his declaration, *or* that they did not sign the poli- " cy." *Burr.* 906, 7. " It is an action of damages in which plain- " tiff is to recover his damages according to his proof."

Did the plaintiffs gain any benefit, did the defendants lose any advantage by the recovery as for a partial loss, my opinion would be that plaintiffs ought not to recover; but I cannot dis-. cover from any part of the argument that there is any benefit to the plaintiffs or any disadvantage to the defendants.

I acknowledge that before I saw the case in 1 *T. R.* 608. the inclination of my mind was in favour of the defendants *on this*

1803.

WATSON
and
PAUL
*v.*
Ins. Co.
N. A.

*point* as a point of strict law, although I would not have signified my approbation of insisting on it by the defendants.

Whether the notice of and demand for a total loss be equivalent to an offer to abandon; whether the refusal to pay on other grounds, does or does not amount to a waiver of such offer, it is not necessary to give an opinion, because my opinion is, on principles supported by cases, and there being neither principle nor case to the contrary, that the verdict is right.

BRACKENRIDGE J. I am of opinion that the verdict should stand, upon this principle, that under the circumstances of this case there was *not a necessity of an express offer to abandon.* In the case of a total loss by sinking or burning, all *spes recuperandi* is gone, or supposed to be gone, and to supersede the necessity of an offer to abandon.

In this case of capture and condemnation, and as said by counsel particularly a *French* condemnation, the hope of recovery was but a bare possibility; it was ideal. The fact is, it was thought to be nothing; and it would have been a burlesque, an insult, to talk of an interest remaining, or to make an offer to abandon. This rebuts the presumption arising from the not expressly offering to abandon, that there was an idea of retaining a chance.

I admit there was an ideal interest to be abandoned because the condemnation on appeal might be reversed, or the government of the captured might indemnify, or that of the capturing compensate for the spoliation; but in the public estimation there was no hope, and the plaintiffs reasonably might have thought there was nothing to abandon.

The notice of the loss and demand of payment would seem in the first instance to be sufficient, and to put it upon the defendants to shew that they had any wish to have the abandonment made. The saying nothing was in fact a waiver.

I think myself on safest ground while going on the first point. As to the other, that in a case of total loss, without an offer to abandon, the insured may receive a part, the jury taking into view and allowing or deducting for the chance of recovering the possibility, it might seem reasonable; but the idea is new, as I take it, in the books. Nor is it analogous to the law merchant in the case of a bill of exchange. On the want of notice to the indorser of nonpayment by the drawee, it cannot be given

in evidence, as superseding the notice or deducting for it, that the drawer was worth nothing or a part of the sum.

1803.

WATSON
and
PAUL
v.
Ins. Co.
N. A.

Have we a right to put the insurer in the power of the jury as to the value of his chance, which might have been abandoned? I think not. He has a right to be the judge of it himself. There is no average of this kind in the books. The bare possibility in this case rebuts the presumption that the insured meant to retain the chance.

The not offering in express terms the abandonment is waived by the silence, and the probability is that it was omitted from the ignorance of the insured.

Judgment for the Plaintiffs.