## The AMERICAN INSURANCE COMPANY v. FRANCIA.

To entitle the insured to recover for a total loss of a vessel, where the object insured continued to exist in specie, there must be an abandonment: Hence, where the jury found that the costs of repairing would so far exceed the value of the vessel when repaired, that no prudent man could doubt as to the propriety of selling the vessel under the circumstances, and that the sale was made under circumstances which rendered it legal, the insured are not entitled to recover for a total loss without an abandonment.

In determining whether there has been a technical total loss of a vessel, her value in the port of necessity is the standard.

The protest is admissible as part of the preliminary proof, though not made within twenty-four hours after reaching a port of safety: the rule in Fleming v. The Marine only excluding it in such case as evidence to the jury.

The master is not bound to sacrifice his deck load before deviating from stress of weather to seek a port of refuge, unless the vessel was suffering from overlading. And then, *Query.*

In determining the master's right to sell, it seems that the rule two-thirds new for old is not applied in ascertaining whether the vessel has been damaged to more than half her value.

The omission in the declaration to aver a refusal by the underwriters to pay, cannot be taken advantage of after verdict—and so of the omission to aver that thirty days had elapsed after proof of loss before suit brought, where the policy provided for payment at such time.

Surveys, when proved by the parties making them, are admissible as evidence, though made at the instance of the captain and by persons nominated by him.

The objection that a commission issued on a shorter notice than is required by the rules of court, is waived by filing cross interrogatories.

IN error from the District Court of Philadelphia.

*Dec.* 15, 16. This was an action on a policy on a vessel valued at $2,500, to recover for a total loss.

The vessel was insured from Spain to the United States. The deck load consisted of certain quarter casks of wine stowed in the long boat amidships. On her voyage, having encountered storms by which her mainmast was sprung and other injuries suffered, the captain bore away for St. Thomas. It was proved that on his

arrival there surveys were made, and the estimated cost of repairs was $1,390, while the value of the vessel when repaired, was estimated at 1,000. The probable cost of repairs and value of the vessel were proved according to these estimates by the surveyors, examined under a commission. Pursuant to the advice of the surveyors, the captain sold the vessel for $460.

Upon receiving information of these facts, notice was given to the underwriters, but no abandonment was made in due time (as was ruled in the court below).

His honour, SHARSWOOD, J., instructed the jury, that if the vessel had received an injury, the master was not bound to throw over his deck load before making for a port of safety, unless the vessel was suffering from no other cause but overlading. That where there was an actual total loss, there was no necessity for an abandonment; and the same rule prevailed where the sale was made by the master in a port of necessity under such circumstances as rendered it legal. There was no *spes recuperandi* in such case, but a total loss, with a salvage of some portion of the subject insured. If, therefore, the cost of repairs would certainly so far exceed her value when repaired that no reasonable man could doubt as to the propriety of selling under the circumstances, it was a total loss without the necessity of abandonment. That the value of the ship was her general value at the time and place where estimated, since the master and those he consulted had no means of judging of her value elsewhere; and the cost of repairs should be estimated at their actual amount, without deducting one-third new for old. If the jury thought under the instructions there was no necessity for a sale, then the plaintiff could recover only for a partial loss, viz: the cost of repairs, allowing one-third new for old.

The exceptions to evidence were: A commission was admitted which had issued on ten days' notice—the rule of court requiring fifteen—but the defendant had filed cross interrogatories. The admission of the surveys by persons nominated by the captain. These were however proved by the surveyors under a commission, and referred to in their answers. The learned judge told the jury these would not have been admissible but for such proof.

In admitting evidence that the protest had been presented as part of the preliminary proofs: the objection was that it had not been made within twenty-four hours after reaching St. Thomas.

Beside the errors assigned in the charge, the exceptions to the pleadings were: 1. There was no allegation of a refusal to pay

on the part of the defendant. 2. There was no averment that preliminary proof was made, and that thirty days had elapsed before suit brought. By the terms of the policy the loss was payable thirty days after proof and adjustment.

*F. W. Hubbell* and *Rawle*, for the plaintiff in error.—The court has decided, in 3 W. & S. 144, that a protest is irregular and not evidence unless made within twenty-four hours after arrival; hence it was inadmissible to show compliance with the rule requiring it as part of the preliminary proof: 2 Phil. on Ins. 511.

To admit a survey as evidence, it must have been by persons appointed by a court of admiralty or a public functionary having authority, or at the instance of the party against whom it is offered: 2 W. C. C. R. 375; 1 Phil. 405; 7 Wheat. 613; 10 Ib. 411.

The master was not justified in deviating until every other means for prosecuting his voyage had failed; the obvious course was to try the effect of lightening the vessel of her deck load.

The rule two-thirds new for old is inflexible in all cases of technical total loss: 2 Cain. Cas. 153; 15 Wend. 453; 11 Pick. 96; 11 Mass. 253; 12 Pick. 284; 16 Ib. 304–12; 7 Ib. 259; 14 Ib. 141; 2 Phil. on Ins. 277–8; 4 Cow. 245; 3 Wend. 658; 21 Pick. 456; 20 Wend. 300. Taking then the valuation in the policy, which is the agreement of the parties, and applying this rule, there was not a technical total loss proved; that is, the cost would not have exceeded half the value. That this valuation is the standard is obviously necessary, for in many ports of refuge there is no market at all for vessels. It is assumed as the standard in 16 Pick. 312; 4 Wend. 55; 7 Cow. 564; 2 Cain. Ca. 153; 21 Pick. 482; 21 Ib. 456; 20 Wend. 287. But if this be not the standard, certainly the general market must be looked to; not any desert island or coast where she may have been driven.

It was said there was no need of an abandonment if the sale was necessary. But the right to contest that sale with the purchaser is the very object of an abandonment. The true rule is, if the thing exists in specie—if it continues a ship—then an abandonment is necessary: 3 Kent, 320. The expense of repairs and the fact of sale make no difference: 15 East, 16; 2 Phil. on Ins. 234–39–40; Parke, 281; Ib. Hilly. ed. 400, n.; 5 M. & Sel. 47; 18 John. 212. This *spes recuperandi* must be ceded: 2 Phil. 231; 1 M. & Rob. 116; 14 East, 465; Holt, 423.

The *narr.* should have averred that thirty days had elapsed after proof: 2 Phil. 643.

*Waln* and *Meredith,* contrà.—The survey need not be ordered by a court of admiralty, it may be ordered by the consul, or by a person selected by the master ; the effect of the report depends upon the competency of the surveyors, and their good faith in making it : 3 Sum. 42.   The case in 2 W. C. C. 375, turned on the admissibility in evidence of a report of surveyors, and it was rejected because the surveyors were not examined.   The competency of the surveyors, as depending upon the power authorizing them, was not touched in the case.   7 Wheat. 613 ; 10 Ib. 411, turned on " the rotten clause," and the only question in them, was, what kind of survey was a " regular survey" to satisfy this covenant in the policy.

The protest was presented to the office with the other preliminary proof.   It was not offered or admitted as evidence to the jury, but simply as one of the usual documents exhibited to the underwriters to inform them of the details of the loss, and one whose absence is suspicious : 2 Phil. on Ins. 511 ; 4 Mass. 88 ; 7 John. 315 ; 3 Binn. 326 ; 2 Dall. 284.

The question as to the deviation is settled by the finding of the jury that the deviation was justified by necessity.   But the law is since pronounced by this court in 7 Barr, 223, that it is no defence to an action on a marine risk, that the loss is occasioned by the negligence of the master.

As to the rule two-thirds new for old, it is difficult to understand why, when the vessel does not, in her repaired condition, come to the possession of the assured, he should be charged with a benefit from which he can derive no advantage.   The reason of the rule is, that the assured is to be charged with the one-third, because he is supposed to receive his vessel improved to that extent by the substitution of new materials for the half-worn old ones.   But the reason ceases in a case of total loss, and where she goes from the control of the assured : 3 Mason, 73.

The question as to the standard of value has been perplexed by inconsistent decisions, in some of our sister states.   If treated as a rule of practical conduct, and tested by the principles of reason, there can be no difficulty.   The value in the policy is a value agreed upon as fixing the amount of insurable interest of the assured at the beginning of the voyage.   It is the sum which will, in case of loss, furnish him with indemnity.   In it are included seamen's wages, outfits of the voyage, premium of insurance, &c.   It is thus fixed to furnish a standard of indemnity, and for none other. But to make this value, at the beginning of the voyage, the crite-

rion for the master to decide by, whether he shall repair, when the voyage is half ended, and at a port of necessity, where the repairs exceed half her value there, is to apply a rule which, in the nature of things, is entirely inapplicable and intended for a different purpose. If the value of the vessel is to be ascertained by the market at one place, and the expense of repairing her by the price of labour and cost of materials at another, it is measuring values which are incommensurable. In some cases, such a rule will authorize an abandonment where the injury is less than 50 per cent., and in others will destroy the right where it is more : 2 Bur. 1169. It will involve the necessity of the master being influenced by the market for vessels and the cost of repairs at some neighbouring port, when he cannot get away from the port of necessity without repairs. The only question for the master to ascertain is, the amount of injury to his vessel; and that he must ascertain where *he* is, and his vessel is—the port of necessity. If he cannot get his vessel away from the port of necessity without repairing her, it is plain that he must repair *there*, or abandon ; and being thus obliged, her value there, and the cost of repairs there, and there only, must regulate his conduct. She is deteriorated by a long voyage—in an India voyage, equal to one-third her value— in hull and rigging ; by wear and tear; by consumption of stores; and, finally, by the direct action of a peril insured against; is crippled and driven to a port of necessity, and reduced, by all these agencies, to half or one-fourth the value at the outset of the voyage ! And at this period of her disasters, you are asked to say that her value in the policy—the value before she encountered any of the perils, or suffered any injury or deterioration, is to be the standard to estimate her losses. But suppose the policy is an open one ; what is the master to decide by then ? or if, as was the fact in the case in hand, and is the fact in a great majority of insurances, the policy is effected while the vessel is at sea, when the master is necessarily ignorant of insurance having been effected. Any other rule than the one contended for, viz: the value at the port of necessity, must involve difficulties insurmountable, and set insurers and assured afloat upon a sea of troubles and speculation : 3 Mason, 68 ; 5 Pet. 604 ; 12 Ib. 398. Independently of the reason of the rule, it is of great moment, in a commercial nation, that there should be consistency of decision on all questions of commercial law (7 Barr, 230) ; which of itself strongly recommends the decisions of the Supreme Court of the United States to the adoption by this court.

It is also alleged for error, that the judge charged that no abandonment was necessary. But the jury have found that the sale by the master was a legal sale, and justified by necessity : the title then of the wreck passed to the purchaser ; there was no property left in the assured to abandon to the underwriter, and a cession would have been an idle formality. It is a total loss with salvage of part, to the value of the proceeds of the sale of the brig, with which the jury have credited the underwriters in the verdict, and there can be nothing to abandon. To whatever use the purchaser may choose to apply the "congeries of planks" composing the hull, can make no difference if the sale was legal. Subsequent application of the wreck cannot affect the question of abandonment. Whether for fire-wood or as a brig, she is still as much beyond the control of the assured as if she had gone down at sea : Roux *v.* Salvador, 3 Bing. N. C. 266, reversing the decision of the S. C. ; same case in the C. P. 1 Bing. N. C. 526 ; 2 Pick. 261 ; 2 John. 155 ; 8 John. 246 ; 15 East. 15 ; 2 Dall. 284.

The objections that there are errors in the declaration are unsound. Mr. Phillips, it is true, says, 2 Vol. 643, that "there are no decisions on the point of averment of compliance with these terms in the policy," but it is submitted that 12 Wheat. 397, 5 Cra. 100, are to the point. If not, however, the omissions were cured by the *second* trial on the merits, if not by the first : 5 W. & S. 529 ; 4 Wh. 498 ; 7 Barr, 301.

*Jan.* 8. GIBSON, C. J.—The exceptions to evidence are unfounded. The objection to the commission to New York, that it issued on ten days' notice, was obviated by the filing of cross interrogatories, which has always been held equivalent to appearance, and a waiver of time or notice. The objection that the commission to St. Thomas was executed by a court acting under authority from the Danish government, is unfounded in fact. Being joint and several, it was well executed by one of the commissioners named in it ; and that the authority of the court here was recognised by the local authority there, neither impaired nor superseded it. The exception to Swift's deposition is not better founded. The account of disbursements for the brig, and the account of sales of her apparel and hull, proved by his testimony, involved no hearsay or secondary evidence. The surveys might have been incompetent as independent documents ; but as the facts contained in them were proved by the testimony of those who made them, they were admissible as parts of the *res gestæ*. Had they not been produced, the defendant

might have founded a troublesome argument on their absence. So, too, of the protest as one of the preliminary proofs of loss. In Fleming *v.* The Marine Insurance, we certainly laid a strong hand on protests, as proof, under the idiosyncrasy of our system, of facts before a jury; not, however, to affect them as preliminary proofs. The rule for the latter is so liberally expounded as to require only the best evidence in the possession of the assured as reasonable information to enable the underwriters to form an estimate of their liability for the loss. Were it not that the cause is to go to another jury, these exceptions would not be particularly noticed.

It is found in the verdict that the deviation to seek a port of safety was justified by necessity; and *primâ facie* that would dispose of the exceptions to the charge that there was no deviation, if the master acted from the best of his judgment and from good motives. But it is argued that he was bound, before seeking a port of necessity, to sacrifice his deck load to save the rest; and that had he done so, the vessel might have reached her port of destination. The weight of authority is, that the jettison of the deck load gives the owner of it no title to contribution, and no action against the master for bad stowage if it were the usage of the trade thus to carry such articles; but I know of no rule which requires the master to sacrifice them in the first instance. Where they pay their proportion of the premium and freight, and the custom of the trade is not to stow them below, it is hard to see why they do not stand on the footing of every other part of the cargo. When the crew have left a sinking ship, it is certainly not the law that the steerage passengers are the first to be cast into the sea when it is necessary to lighten the boats. As to contribution, however, the American cases establish a different principle, and we are bound by it; but the argument of Valin for it—that a deck load impedes the navigation of the ship—though it might be a reason for getting rid of it in a case of necessity, is no reason, because it is peculiarly conducive to the general safety to disencumber the ship of it, that it should not be proportionately paid for. In this instance the loss would not have been compensated; and for that very reason the master was not bound to sacrifice an unprotected property, in ease of those whose property was protected by the right of contribution. But there is no reason to think the brig would have survived the perils of the sea even without her deck load; and if there was room for apprehension, it was not the duty of the master to make the experiment. As the matter rested on his discretion, the assured would not be affected by a mis-

take in the exercise of it, unless it were so gross as to be evidence of incapacity or *mala fides*.

It is assigned for error that the jury were instructed " that one-third, new for old, was not to be deducted from the estimated amount of repairs, in computing whether the needed repairs would have exceeded half the vessel's value when repaired." It is difficult to see what that had to do with the master's right to sell. In the case of a partial loss, the damage is calculated on the expense of repairs where the owner chooses to repair; where he does not, it is calculated on the best data that can be had. But where the ship has been actually repaired, her value being greater than it was before the disaster, by the replacement of old timbers and materials with new, the owner must contribute to the expense in proportion to the benefit, and, according to the usage, as one to two. But even if the rule were applicable to a technical total loss, it would be unnecessary to apply it here; for, independent of all other considerations, it seems to be settled by authority that the plaintiff can recover for no more than an average loss for want of seasonable notice of abandonment.

It is not pretended that the notice was in time; but there is plausibility in the argument that it was not necessary. It is said, that if the sale by the master was no more than a wholesome exercise of his discretion under the circumstances, there was a total loss of the *title;* and that though the brig afterwards existed as a vessel gone from the control of the assured, there was nothing to abandon. On the other hand, it is asserted that the right to contest the validity of the sale with the master or his vendee, ought to have been ceded as a thing of appreciable value, like the *spes recuperandi* between capture and condemnation. But, replies the assured, even that is extinguished by sentence of condemnation, which passes the title; and as the validity of the sale must be maintained by the assured, the fact can as well be tried in an action on the policy, as it can be tried in an action against the master and his vendee. Whatever force there may be in these arguments, it seems to be settled by a decisive weight of authority, that in every case of insurance on the ship or cargo, though perhaps not on freight, when the master has sold the thing insured, there must be an abandonment, to avoid the conclusion that the assured has elected to go for a partial loss. It is said, that if any part of the property survive the peril, as in case of shipwreck, without a total destruction of it; or that, if any *claims* springing from the ownership of it remain to the assured, they must not be

2 L

retained, but ceded as a foundation to recover the whole. Most of the English authorities have been collected by Chief Justice Tindal, in the comparatively modern case of Roux v. Salvador; and from their express bearing, in opposition to Cambridge v. Anderton, 2 B. & C. 691, he concluded that an abandonment was necessary in that case, which was in principle identical with the case before us. The hides, when sold, were rapidly becoming a loathsome mass of putrefaction; and if ever the master's right to sell was incontestable, it was in that case. If contestable, it could have been tried in the action on the policy there as well as it could be tried in the action on the policy here; but Chief Justice Tindal introduced a new element into the discussion, which seems to be of commanding influence. "For as the assured," said he, "in no case is bound to consider the loss a total loss, but may always take to what is saved, and recover for an average loss; if it is to be held that abandonment is unnecessary where there has been a sale, the underwriter can have no certainty as to his rights or liabilities before the assured determines his election by bringing the action for a total loss. This uncertainty of itself, and if no other consequence follows, is highly prejudicial to the underwriter. It may be further prejudicial in its direct consequences; agents may fail, in whose hands the proceeds are left; and, still further, the right of the underwriters to dispute the validity of the sale, with the purchaser of the ship or cargo, upon the ground of fraud, might, by the intervention of time, be impaired or entirely defeated." I am at a loss to see how this argument can be refuted. In reversing the judgment, in the Exchequer Chamber, Lord Abinger, who delivered the opinion of the court, did not attempt to refute it; and we are at liberty to give more weight, on principle, to the judgment of the Common Pleas, accordant as it is with the judgments of the state courts of our Union, and the general course of the British courts, than to the judgment of the Superior Court in England. He assumed what cannot be maintained, that the underwriters cannot be prejudiced by a protracted ignorance of the responsibility they have to meet, or of the course they have to pursue. The conclusion drawn by Chief Justice Tindal, is sustained by Martin v. Crokatt, 14 East, 465, and Bell v. Nixon, 1 Holt, 423— cases posterior or not cited by him. Idle v. The Royal Exchange Insurance has been thought to bear the other way; but the insurance was on freight which was entirely lost by the breaking up of the voyage; and there was consequently nothing to abandon. The American cases generally fall in with the current. The authori-

ties were examined by Chief Justice Shaw, in Smith *v.* The Manu-
facturers' Insurance Company (7 Met. 449), who laid down the
rule that in every case like the present, an abandonment is neces-
sary. Such, too, is the rule of Pierce *v.* The Ocean Insurance
Company, 18 Pick. 91; Cohen *v.* The Insurance Company, Dud-
ley, S. C. 147, and The American Insurance Company *v.* Ogden,
15 Wend. 532; while we have to the contrary, only Gordon *v.* The
Insurance Company (2 Pick. 249), said to have been recognised by
Mr. Justice Thompson, 5 Pet. 604. It was said, in the American
Insurance *v.* Ogden, that "the right to abandon does not in all
cases depend upon the amount of damage, but exists in all cases
where the ship is gone from the control of the assured; where the
voyage is broken up, and where a sale of the ship has become
necessary for the benefit of all concerned." The master had sold
the vessel at auction because she was without indispensable repairs,
which he had not means to procure; and it was held, that the
assured *might* abandon and recover for a total loss; which cer-
tainly implies that he could else have recovered only for a partial
loss. In Watson *v.* The North American Insurance, 1 Binn. 47,
our own court held that the assured might recover, without aban-
donment, for an average loss after sentence of condemnation,
leaving the jury to estimate and deduct the value of the chance of
reversal and restoration of the property; but in Brown *v.* The
Phœnix, 4 Binn. 445, the Chief Justice and Mr. Justice Bracken-
ridge seem to have been disposed to carry the necessity of aban-
donment as far as it is at present proposed to do.

The exceptions to the declaration are unfounded, and every point
not particularly noticed, was properly disposed of.

Judgment reversed, and a *venire de novo* awarded.