## MYERS v. BAYMORE.

A master of a vessel in a port of refuge is not justified in selling the cargo as damaged, by showing that he acted in good faith and under the advice of surveyors called by him, who reported it damaged and recommended a sale for the benefit of all concerned, if it be shown that no necessity existed for a sale.

CERTIFICATE from the Nisi Prius.

*March* 7.    The defendants were owners of the schooner Ninetta, on board of which certain sugars were shipped from Louisiana, consigned to the plaintiff at Norfolk, Va.   The vessel having sprung a leak, and being otherwise injured by stress of weather, the captain put into St. Thomas as a port of refuge.   The usual surveys were had upon the vessel, and repairs recommended. Shortly after the arrival of the vessel there, the cargo, consisting of hogsheads of sugar, was landed.   A survey was then called by the captain upon the cargo.   The surveyors reported that seventy-one hogsheads were "damaged by sea-water, all which they recommend forthwith disposed of at public sale, for account of whom it may concern."   The sale was accordingly made in March.   At a subsequent period the residue of the cargo was disposed of by the captain, and the proceeds of the whole cargo applied to the payment of the repairs.

The defendants accounted to the plaintiffs for the market value at the port of destination of the sugar admitted to have been sound, and for the nett proceeds of what was alleged to have been damaged.   The question was, whether they were liable for the market value of the whole cargo at the port of destination.   The plaintiffs gave evidence that eleven of the seventy-one hogsheads sold in March, were purchased to be shipped to Boston; the remaining sixty hogsheads were purchased and brought to Philadelphia, where they were sold on the wharves, after examination, and purchased as sound sugar.   The forty hogsheads of sound sugar were taken to Baltimore, and a comparison of accounts showed that the weight of the two parcels averaged the same.

The defendants proved by one of the surveyors that they examined the hogsheads, taking out the heads, and found a quantity damaged, which they recommended to be sold, and that the sale was fairly made at auction.   He also stated that there were a number of vessels there, seeking cargoes for the United States.

His honour, BELL, J., instructed the jury, that the question for them was, whether the captain was justified in making the sale. " This power to sell a cargo, by a master of a vessel, is an extreme

one forced upon the master (who does not represent the owner) by mere necessity. To sell is the last thing which ought to be done, and then it is only permitted because most to the advantage of the owners. It is not every case of partial injury which will justify a sale : the cargo may be partially injured, and yet the market may be such as to render a sale improper. The extent of the power of a master to sell a damaged cargo is thus well expressed : ' Where the cargo is damaged to such an extent, that to carry it to the port of destination would endanger the ship, or it would be probably worthless on its arrival, it is the duty of the master, exercising a sound discretion for the benefit of all concerned, but especially the shippers, to sell it where the necessity arises.'

" Now, was the sugar in question injured to this extent, or did the captain, acting *bonâ fide*, honestly, and with an eye single to the benefit of the owners, believe it to be so injured, and proceed accordingly ?

" In these cases, something must be confided to the discretion of the master, under the emergencies which have occurred, and, in a doubtful case, a *bonâ fide* exercise of this discretion will protect him, though it be shown he might have acted more beneficially. So where surveys have been properly held by competent and impartial persons, who find the goods damaged, and on this ground recommend a sale, this, in a case of doubt, though it is by no means conclusive, ought to weigh in favour of the action of the master, on a question of the necessity of the sale.

" But, in a case where it is clear no such necessity existed, the allegation that the master acted *bonâ fide*, and in the honest exercise of his discretion, or in pursuance of the advice of surveyors selected by himself, or his agent, will not protect him or his employers.

" Under these rules, it is a question for your consideration and determination, whether such a case of extreme necessity existed in this instance."

*G. M. Wharton,* for plaintiff in error.—The only questions are, whether the judge was right in saying there must be a necessity for a sale to justify the master, and whether subsequent events were properly taken into consideration, in determining his liability. This is not the case of sound cargo, but of one unsound, or so supposed to be and reported. The master took the advice of surveyors, as he was bound to : and what would have been his defence if he had not followed it, and there had been an entire loss? He

is thus placed between two fires, and a most unreasonable responsibility thrown on his employers. It is conceded he must act as a prudent owner would; and yet, when he does so, and is guided by the disinterested advice of competent persons on the spot, he is liable for a defect or mistake in judgment. The authorities do not support this. They say, he should act according to his best judgment, and be guided by the advice of the surveyors, and then he is protected: Stev. & Ben. on Av. 285; 2 Story, 471; 13 Pet. 387; 2 Pick. 249; 3 Sumn. 27. In our own courts it has been decided to be sufficient if the sale was expedient: 6 Bin. 262. Nor can the subsequent events be used to show mere mistake in judgment. In all cases, nearly, the purchaser makes a profit; but the captain must be judged of by the apparent circumstances at the time he acted.

*McMurtrie*, contrà.—The facts must be looked to, to determine the correctness of the charge. The nature of the cargo and the alleged damage was such, that by showing the sugar existed in specie, we showed it never had been injured in the manner alleged.

But the judge went beyond the cases in favour of defendants. They are clear and uncontradictory, that a necessity must exist for a sale; and the greatest weight ever allowed to a survey is to require the plaintiff to show the facts were mistaken by the surveyors and captain. And this is reasonable. He asks to be discharged as a carrier, by reason of a sale. That is authorized, not by the owner, but by the law, under restrictions. If he exceeds his powers he is in the situation of any other agent who exceeds the authority granted by his principal: Ab. on Ship. 367–8; 15 Wend. 477; 2 Stark. 1; 2 B. & Ald. 2; 1 Bing. 243, 248; Pierce v. The Ocean, 18 Pick. 88; Bryant v. Comth. 13 Pick. 549–51; Am. Ins. v. Center, 4 Wend. 52; Pope v. Nickerson, 3 Story, 466, 504; Edw. Ad. 118; 3 J. B. Mo. 145; 5 B. & Ald. 617; 2 Pick. 261; 9 Ib. 477; 2 Camp. 43; 5 Pet. 605, 621; 12 Pick. 279. These cases show that *bona fides* is immaterial, if the facts were mistaken; so, if there be a survey recommending a sale, or even a decree of the admiralty; and all agree in using the term "necessity." The cases cited on the other side, are where the vessel or cargo was in imminent peril. There the chance of recovery is the only thing sold; but when once the peril is past, its consequences, as a protection, are gone. The citation from Stevens is misapprehended; the writer assumes, as a basis of his

argument, that it is for the benefit of the owner, that a sale should be made; and the recent case in 3 Sumn. 44, relied on, considers the survey but as *primâ facie* evidence. 6 Bin. 262 was like the case of a ship on the rocks; it was admitted, but for the extraordinary efforts of the purchaser, the cargo would have been wholly lost from the injuries sustained.

The court declined hearing *F. W. Hubbell*, on the same side.

*Reply.*—The cases of injured ships, and none others are cited on the right of the master to sell damaged property, are inapplicable. There the question is, always, whether there has been a constructive total loss, by reason of an injury, to more than half the value; not whether there must be a sale to prevent further depreciation. The only case where the question arose on a damaged cargo, was Smith *v*. Martin, where expediency was held to be sufficient.

*March* 9. COULTER, J. — Three errors are assigned on this record: 1st. That the judge erred in charging that the sale of damaged cargo by a master is only justifiable in a case of extreme necessity, or where it cannot be carried to the port of destination, or would be worthless on its arrival there. 2d. That *bona fides* on the part of the master, and the honest exercise of his discretion, and his acting in conformity with the advice of surveyors, would not protect him or his employers, where it was clear that no such necessity existed as that above stated.

The third is merely an iteration of the first two, by reference to the refusal to grant a new trial on these grounds.

The sugars alleged to have been damaged by salt-water, were sold at St. Thomas (whither the vessel was driven by stress of weather and peril of the sea) by the master, directly after they were unshipped at that place; and they weighed more when sold, and when they arrived at Philadelphia, where bulk was broken, and they were inspected, than could have been the case if they had taken in salt-water. It is fully proved and admitted that the sugars were not damaged, although the surveyors at St. Thomas reported they were, and recommended a sale. They were consigned to Norfolk, and were brought to Philadelphia, a port more distant from St. Thomas than Norfolk. So that the master might have given notice to the consignee at Norfolk, which it was his duty to do, unless imminent necessity to prevent greater loss prevented him, and compelled a sale; or he might have reshipped them

to Norfolk, as they were reshipped to Philadelphia, which was also his duty. But the case does not turn on this point. Was the sale admonished, and compelled by necessity? Mere expediency or conjectured benefit to the consignee or those concerned, will not authorize the master to sell, or constitute him the agent of the concerned.

If goods are thrown overboard in a moment of distress and danger, for the purpose of saving the ship and cargo, all the interests must contribute to make up the loss by general average. But if the goods have been thrown overboard unnecessarily by the master, no matter with what honest intention to save, or under what illusion of danger, the loss will not support a claim for general average: 3 Camp. 486; Abbott, 427. It is necessity, real necessity alone, which lifts away, not only the contract of the carrier at sea to deliver the goods safely at the port to which they are consigned, but also the dominion of the owner, and substitutes the will and control of another instead thereof. And this is in unison with the nature of things and property, and accords well with the old proverb that necessity has no law: that is, the ordinary rights of individuals yield to its force and supremacy. So, the law is the same in the case under consideration. It is taken for granted in the instruction of the court, that the master acted *bonâ fide*: but, whether or not, as it appears to me, is of no great consequence in this case. The goods were in fact not damaged, but sound; the evidence was irresistible in that way, and the jury have so found. The master may have been under a delusion, may have supposed the goods damaged, and although I confess it appears somewhat marvellous to me from the evidence, he may have honestly thought that the advice of the surveyor to sell was right. But if so, the owners of the ship, in whose employment he was, ought rather to suffer from his want of skill, care, and prudence, than the innocent consignee. If the rule was relaxed from its rigour and potency, the owners of goods, and of the ship also, would be exposed to cupidity, treachery, and schemes of the master and a few persons in league with him in those island ports, where roguery is formed into a system, by desperate and profligate men. Necessity, arising from peril of the sea, and stress of weather, excuses the carrier, and the burden of showing or proving that necessity, lies on him. In such necessity, the master becomes the agent of all concerned. He then acts under the compulsion of a high and vehement exigency, which, when once established, substitutes his caution, vigilance, and discretion, in place of the implied contract to deliver safely.

Was, then, this exigency, or anything equivalent to it, established by defendants? The survey conduced to prove it, and was *evidence* for that purpose, but nothing more. There is nothing in the certificate or survey which invests it with any peculiar sanctity. Surely, on a trial, the consignee is permitted to prove, by countervailing evidence, that, whether by mistake, ignorance, or design, it is untrue. It imports no greater verity than the sworn testimony of the surveyors, if they had been examined. To sustain these principles, numerous cases may be cited. The master's opinion, good faith, and benefit of all concerned, will not justify, unless circumstances rendered it necessary in the opinion of the jury: 5 Pet. 621. The survey affords no defence, if the facts are untrue, or the inferences unfounded: 12 Pick. 279. Even a decree of the admiralty is, of itself, no justification: 1 Bing. 243. And the reason is, that it, like the survey, is *ex parte*. The moral necessity, to justify the sale of damaged goods, must be so great as to involve a greater loss than would follow the sale: 3 Story, 504. It is contended, however, by the plaintiff in error, that the condition of the sugar, at the time of the survey, was the proper test of the correctness of the sale by the master. That is true. But how could that test be ascertained? The counsel alleges, that the condition of the sugar, when it was afterwards sold in Philadelphia, ought not to have been admitted to impugn the survey. But such a rule of evidence has no existence—would be unjust, and only calculated to shut out the truth. If it could be established that a spoiled and damaged article of that kind, by a self-purifying and regenerating process, will become sound again, there might be something in the position. But then there would be no necessity of sale, a little time would cure the damage, and the master could leisurely give notice to the consignee at Norfolk, which was his first duty in any event.

But the true criterion of its condition at the time of survey and sale, was its condition when bulk was broken in Philadelphia, and it was sold in parcels, when it was ascertained to be sound, wholesome, marketable, and of full weight: a thing utterly impossible if the hogsheads had received salt-water in stress of weather. Its condition, in Philadelphia, when bulk was broken, afforded the very best evidence the nature of the case admitted as to what its condition was at the time of survey. The correctness of these principles is not at all impugned by the authorities cited on the part of the council for the plaintiff in error. In Gordon *v.* Mass. Ins. Co., 2 Pick. 249, it is stated, that if the surveyors are com-

petent in point of skill, and wholly disinterested and honest, their advice imposes a moral necessity upon the master. But mark the important qualification, contained in the decision, to wit, "Unless it shall be made to appear by those who contest the loss, that the facts on which they founded their opinion were untrue, or the inferences they drew were incorrect." The fact on which, in this case, they predicated their advice to sell, was, that the sugar was damaged. But that was untrue, so that, in fact, this case aids those I have cited. Smith v. Martin, 6 Bin. 262, will not be found adverse. It was there ruled, that a master who sells contrary to his duty, is liable; and that he has no right whatever, when driven off his course by stress of weather, to sell goods which are in good condition and not perishable, without the order of the owners, to whom he is bound to give immediate information. So far as any doctrine or point in that case was similar to this case, the two are in harmony.

The instruction of the Court of Nisi Prius was in accordance· with settled law: the verdict and judgment are not to be disturbed.

Judgment affirmed.